FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
6/15/2020
CLERK'S OFFICE
AT GREENBELT
BY KN, DEPUTY CLERK

DJB/EGW: USAO 2017R00754

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| v. | *   CRIMINAL NO. PWG 20-cr-0152 |
| | * |
| **EDDIE RAY JOHNSON, JR.,** | *   (Theft of Government Property, |
| | *   18 U.S.C. § 641; Money Laundering, |
| **Defendant** | *   18 U.S.C. § 1956(a)(1)(B)(i); Forfeiture, |
| | *   18 U.S.C. § 981(a)(1)(C), 18 U.S.C. |
| | *   § 982(a)(1), 21 U.S.C. § 853(p), |
| | *   28 U.S.C. § 2461(c)) |
| | * |

*******

### INFORMATION

### COUNTS ONE AND TWO
**(Theft of Government Property)**

The United States Attorney for the District of Maryland charges that:

### Introduction and Background

At all times relevant to this Information:

1. Defendant **EDDIE RAY JOHNSON, JR. ("JOHNSON")** was a resident of Brandywine, Maryland.

2. The Secretary of the United States Air Force, Office of the Legislative Liaison ("SAF/LL") was located at the Pentagon. The SAF/LL, among other duties, facilitated travel for members of Congress and professional staff who wanted to visit Air Force assets or installations. SAF/LL would facilitate and pay for members of Congress to travel with funds allocated to the Air Force by Congress ("Official Representation Funds"). SAF/LL would also often send a representative, or "travel escort," on the trip with the delegation to pay for official expenses arising during the travel.

3. Since at least March 2014, SAF/LL has paid for Congressional travel by charging travel-related expenses to Citibank-brand, government credit cards issued to Air Force employees ("Citibank Travel Cards"). Citibank Travel Cards were to be used for official government travel only, and were not permitted to be used for personal benefit or expenses.

4. In certain circumstances, SAF/LL employees were permitted to use their Citibank Travel Cards to obtain cash advances for official government purposes, typically when the scheduled travel was to a location where most transactions occurred in cash, when reimbursing travelers for expenses incurred without the travel escort present, or funding travel for congressional appropriators. Logistically, obtaining a cash advance from Citibank Travel Cards could be difficult for SAF/LL employees because there was no Citibank location near the Pentagon. Instead, SAF/LL members went to the Bank of America branch located at the Pentagon, where SAF/LL members were instructed to open a non-interest bearing account in their own names ("FRED accounts"). Through the Bank of America FRED accounts, SAF/LL members could deposit and withdraw government funds for official use without accruing interest.

5. All of the Citibank Travel Cards issued to SAF/LL employees were linked to and billed through a central Citibank account. The Resources Directorate, Office of the Administrative Assistant to the Secretary of the Air Force ("SAF/AA") managed and provided oversight for the centrally billed Citibank Travel Cards. Citibank invoiced the Air Force monthly for all Citibank Travel Card purchases and cash advances made in support of Congressional delegation travel incurred the previous month. Upon receiving the invoice, members of SAF/AA created vouchers that were in turn sent to the Defense Finance and Accounting Service ("DFAS") for payment.

6. From approximately January 2003 to February 2018, **JOHNSON** was a civilian employee with SAF/LL. Most recently, **JOHNSON** served as Travel Coordinator, where he planned congressional travel, reviewed and approved accounting packages submitted by trip escorts, and was the SAF/LL liaison to SAF/AA. This was a managerial role and rarely involved **JOHNSON** serving as a trip escort for a Congressional delegation. **JOHNSON** resigned from the Air Force in February 2018.

7. From at least March 2014 until February 2018, **JOHNSON** was issued a Citibank Travel Card ending x4146 ("Citibank Card 4146").

8. Between in or about March 2014 and in or about September 2017, **JOHNSON** used Citibank Card 4146 to obtain over $1,100,000.00 in cash advances at Bank of America bank branches in Maryland, Virginia, and Washington, D.C., at least $774,000.00 of which **JOHNSON** diverted for his own personal use. In fact, often, **JOHNSON** deposited these cash advances, in whole or in part, into his non-interest bearing Bank of America FRED account ending in x1322 ("FRED BOA 1322") and thereafter knowingly used the funds for unauthorized purposes.

## The Charges

9. On or about the dates listed below, in the District of Maryland, the defendant,

**EDDIE RAY JOHNSON, JR.,**

did embezzle, steal, purloin, and knowingly convert to his use and the use of another, any money and a thing of value of the United States and any department and agency thereof, with an aggregate value that exceeded $1,000.00, namely, unauthorized cash advances he obtained on Citibank Card 4146 that the Air Force had issued to him for official use only:

3

| COUNT | DATE | ADVANCE LOCATION | ADVANCE AMOUNT |
|---|---|---|---|
| 1 | June 25, 2015 | Waldorf, Maryland | $4,000.00 |
| 2 | August 17, 2015 | Waldorf, Maryland | $8,500.00 |

18 U.S.C. § 641

## COUNTS THREE THROUGH SEVEN
### (Money Laundering)

The United States Attorney for the District of Maryland further charges that:

1. Paragraphs 1 through 8 of Counts One and Two are re-alleged here.

2. In or about January 2014, **JOHNSON** opened at a Wells Fargo bank branch in Brandywine, Maryland a Wells Fargo bank account ending x9230 ("Wells Fargo 9230"). **JOHNSON** was the sole owner of Wells Fargo 9230.

3. In or about April 2014, **JOHNSON** opened at a NASA Federal Credit Union ("FCU") branch in Bowie, Maryland a NASA FCU bank account ending x9571 ("NASA FCU 9571"). **JOHNSON** was the sole signatory on NASA FCU 9571.

4. Shortly after he obtained an unauthorized cash advance on Citibank Card 4146, and deposited some or all of the cash advance into FRED BOA 1322, **JOHNSON** wrote himself checks which were subsequently deposited into his personal bank accounts, primarily Wells Fargo 9230 and NASA FCU 9571, and otherwise expended the cash advances on personal items.

### The Charges

5. On or about the dates listed below, in the District of Maryland, the defendant,

**EDDIE RAY JOHNSON, JR.,**

did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity—that is, theft of government property, in violation of 18 U.S.C. § 641—knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity:

5

| COUNT | DATE | LOCATION | FINANCIAL TRANSACTION |
|---|---|---|---|
| **3** | June 16, 2015 | Brandywine, Maryland | Deposit into Wells Fargo 9230 of $6,000.00 check drawn on **JOHNSON's** FRED BOA 1322 |
| **4** | June 25, 2015 | Brandywine, Maryland | Deposit into Wells Fargo 9230 of $4,000.00 check drawn on **JOHNSON's** FRED BOA 1322 |
| **5** | July 17, 2015 | Bowie, Maryland | Deposit into NASA FCU 9571 of $4,900.00 check drawn on **JOHNSON's** FRED BOA 1322 account |
| **6** | August 17, 2015 | Waldorf, Maryland | Deposit into Wells Fargo 9230 of $4,950.00 check drawn on **JOHNSON's** FRED BOA 1322 |
| **7** | August 20, 2015 | Waldorf, Maryland | Deposit into Wells Fargo 9230 of $1,500.00 check drawn on **JOHNSON's** FRED BOA 1322 |

18 U.S.C. § 1956(a)(1)(B)(i)

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further states that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461(c), as a result of the defendant's convictions on Counts One through Seven of this Information.

### Theft of Government Property Forfeiture

2. Upon conviction of the offenses set forth in Counts One and Two of this Information, the defendant,

**EDDIE RAY JOHNSON, JR.,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations, including but not limited to the property of the United States identified in Counts One and Two.

### Money Laundering Forfeiture

3. As a result of the offenses set forth in Counts Three through Seven of this Information, the defendant,

**EDDIE RAY JOHNSON, JR.,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1) any property, real or personal, involved in such offense, and any property traceable to such property.

## Property Subject to Forfeiture

4.  The property to be forfeited, includes, but is not limited to, at least $15,174.00 in U.S. currency seized from the defendant's residence in Brandywine, Maryland on or about November 6, 2019.

## Substitute Assets

5.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or,

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

June 15, 2020
_____
DATE

*Robert K. Hur/djb*
_____
Robert K. Hur
United States Attorney