

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Dana Brusca
Assistant United States Attorney
Dana.Brusca@usdoj.gov

Mailing Address
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770-1249

Office Location
6406 Ivy Lane, 8th Floor
Greenbelt, MD 20770-1249

DIRECT  301-344-0222
MAIN  301-344-4433
FAX  301-344-4516

April 13, 2021

| FILED | ENTERED |
| LOGGED | RECEIVED |

DATE: **May 14, 2021**
AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY: SRS

Julie Stelzig, Esquire
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
By email: Julie_Stelzig@fd.org

Re:    <u>United States v. Eddie Ray Johnson, Jr.</u>,
       Criminal No. PWG-20-152

Dear Ms. Stelzig:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, **Eddie Ray Johnson, Jr.** (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Friday, April 23, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense of Conviction</u>

1.     The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges the Defendant with theft of government property, in violation of 18 U.S.C. § 641. The Defendant admits that the Defendant is, in fact, guilty of this offense and will so advise the Court.

<u>Elements of the Offense</u>

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, (1) the Defendant stole, embezzled or knowingly converted property as described in the Indictment; (2) that the money or property described in the Indictment belonged to the United States government; (3) that the Defendant acted knowingly and willfully with the intent to deprive the government of the use and benefit of its property; and (4) the value of the property was greater than $1,000.

<u>Penalties</u>

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 641 | N/A | 10 years | 3 years | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

3

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that:

a.      The base offense level is **6**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a).

b.      A **14**-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), because the loss was more than $550,000 but less than $1,500,000.

c.      A **2**-level increase applies, pursuant to U.S.S.G. § 3B1.3, because the Defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.

d.      It is the Defendant's position that, pursuant to U.S.S.G. § 5H1.3, a downward departure is appropriate in this case because either (a) the Defendant's mental and emotional conditions, individually or in combination with other offender characteristics, are present to an unusual degree or distinguish his case from the typical cases covered by the guidelines, or (b) a downward departure is appropriate to accomplish a specific treatment purpose. This Office disagrees and reserves the right to oppose such a downward departure.

       e.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level for Count One pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

       7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

       8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Obligations of the Parties</u>

       9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

<u>Waiver of Appeal</u>

      10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

       a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

       b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.    The Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of **19**; and

        ii.    This Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an offense level of **19**.

        c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Forfeiture</u>

11.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: at least $4,000 in U.S. currency seized from the defendant's residence in Brandywine, Maryland on or about November 6, 2019.

13.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

14.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

<u>Restitution</u>

16.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses as a result of the scheme to steal government funds described in the Stipulation of Facts attached hereto as Exhibit A, which the parties stipulate is at least **$1,157,540.69.** The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. **The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution, and that he will make a good faith effort, prior to sentencing, to sell the Defendant's baby grand piano, which was purchased using criminal proceeds, at fair market value, and make the proceeds of such sale available for restitution.  In addition, the Defendant agrees to make a lump sum payment of at least $1,000 toward restitution.** If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

<u>Collection of Financial Obligations</u>

17.     The Defendant expressly authorizes the U.S. Attorney's Office for the District of Maryland to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office for the District of Maryland, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

<u>Defendant's Conduct Prior to Sentencing and Breach</u>

18.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful

in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

20.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

By:   Dana J. Brusca
Elizabeth G. Wright
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

14 Apr 2021
Date                                              Eddie Ray Johnson, Jr.

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

April 14, 2021
Date                                              Julie Stelzig, Esq.

9

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant **EDDIE RAY JOHNSON, JR. ("JOHNSON")** was a resident of Brandywine, Maryland, who was employed as a civilian member of the United States Air Force from, at least, 2003 until he resigned in February 2018.

During that period, the Secretary of the United States Air Force, Office of the Legislative Liaison ("SAF/LL") was located at the Pentagon. The SAF/LL, among other duties, facilitated travel for members of Congress and professional staff who wanted to visit Air Force assets or installations. SAF/LL would facilitate and pay for members of Congress to travel with funds allocated to the Air Force by Congress ("Official Representation Funds"). SAF/LL would also often send one or more representatives, or "travel escorts," on the trip with the delegation to pay for official expenses arising during the travel.

Beginning no later than March 2014, SAF/LL paid for congressional travel by charging travel-related expenses to Citibank-brand, government credit cards issued to Air Force employees ("Citibank Travel Cards"). Citibank Travel Cards were to be used for official government travel only, and were not permitted to be used for personal benefit or expenses.

In certain circumstances, SAF/LL employees were permitted to use their Citibank Travel Cards to obtain cash advances for official government purposes, typically when the scheduled travel was to a location where most transactions occurred in cash, when reimbursing travelers for expenses incurred without the travel escort present, or when funding travel for congressional appropriators. Logistically, obtaining a cash advance from Citibank Travel Cards could be difficult for SAF/LL employees because there was no Citibank location near the Pentagon. Instead, SAF/LL members went to the Bank of America branch located at the Pentagon, where SAF/LL members were instructed to open non-interest-bearing accounts in their own names ("FRED accounts"). Through the Bank of America FRED accounts, SAF/LL members could deposit and withdraw government funds for official use without accruing interest.

All of the Citibank Travel Cards issued to SAF/LL employees were linked to and billed through a central Citibank account. The Resources Directorate, Office of the Administrative Assistant to the Secretary of the Air Force ("SAF/AA") managed and provided oversight for the centrally billed Citibank Travel Cards. Citibank invoiced the Air Force monthly for all Citibank Travel Card purchases and cash advances made in support of congressional delegation travel incurred the previous month. Upon receiving the invoice, members of SAF/AA created vouchers that were in turn sent to the Defense Finance and Accounting Service for payment.

During his civilian employment with the United States Air Force, **JOHNSON** worked in the SAF/LL office, most recently as Travel Coordinator. As Travel Coordinator, **JOHNSON** planned congressional travel, reviewed and approved accounting packages submitted by trip escorts, trained new SAF/LL trip escorts, and was the SAF/LL liaison to SAF/AA. This was a managerial role and rarely involved **JOHNSON** serving as a trip escort himself for a congressional delegation. Nonetheless, because **JOHNSON** coordinated congressional travel for SAF/LL, from at least March 2014 until February 2018, **JOHNSON** was issued a Citibank Travel Card ending x4146 ("Citibank Card 4146"). The credit limit on Citibank Card 4146 was $50,000, which reflected the position of trust **JOHNSON** held in the SAF/LL office.

Between in or about March 2014 and in or about September 2017, **JOHNSON** used Citibank Card 4146 to obtain over $1,131,034.07 in cash advances (including the $4,000 in cash advances **JOHNSON** obtained on June 25, 2015, as charged in Count One of the Indictment), primarily at Bank of America bank branches in Maryland, Virginia, and Washington, D.C., which he diverted for his own personal use. Often, **JOHNSON** deposited these cash advances, in whole or in part, into his non-interest-bearing Bank of America FRED account. He thereafter knowingly used the funds for unauthorized purposes, including writing himself and his family members checks for claimed reimbursements that had not in fact been incurred.

**JOHNSON** spent the stolen money on his personal living expenses, e.g., to pay for his own personal credit cards, and luxury items such as a baby grand piano, loan payments for a Harley Davidson motorcycle, and family vacations. He also provided cash to his family members, including his spouse. At times, **JOHNSON** asked his spouse to pay for household expenses, such as furniture and the monthly television bill, out of her bank account and then **JOHNSON** would reimburse his spouse for these expenses in cash.

During execution of a search warrant at **JOHNSON's** residence in Brandywine, Maryland on or about November 6, 2019, law enforcement recovered approximately $15,174.00 in U.S. currency from **JOHNSON's** residence. **JOHNSON** agrees that at least $4,000 of the funds seized were the proceeds of **JOHNSON's** offense.

In all, **JOHNSON's** conduct caused a loss to the U.S. government of $1,157,540.69, which includes a total of $26,506.62 in banking and service fees that the Air Force paid to Citibank monthly in connection with the cash advances **JOHNSON** had obtained.

SO STIPULATED:

_____
Dana J. Brusca
Elizabeth G. Wright
Assistant United States Attorneys

_____
Eddie Ray Johnson, Jr.
Defendant

_____
Julie Stelzig, Esq.
Counsel for Defendant